# SUPREME COURT.

## Simon J. M. Bear agt. The American Rapid Telegraph Company and others.

*Corporations — Trustees — Contracts — Syndicate agreement — Rights of parties under — Parties — Practice.*

The plaintiff, with others, owners and inventors of appliances in telegraphy, in December, 1878, entered into a syndicate agreement, and defendants Angle and Craig, as trustees of the syndicate, issued to plaintiff a certificate for twenty shares of its stocks. The defendant Wallace was afterwards joined as trustee with Angle and Craig. The defendant Telegraph Company was organized soon after, and its 30,000 shares of stock distributed equally among three trustees, its corporators, one of whom was defendant Wallace. The syndicate inventions and patents were transferred by Angle, Craig and Wallace for 20,000 shares of the company's stock to the three trustees of the defendant company, Read, Brown and Wallace, who at the same time transferred them to the company. After the company had gone into operation, a certificate for the 20,000 shares due the trustees of the syndicate was made out, but was never issued to them. In this action to assert plaintiff's title in the trust property as member of the syndicate :

*Held*, that the corporation was chargeable, not only by the connection of Wallace with its organization, but by the fair inference to be drawn by

the course of dealing with the several parties, with knowledge of the representative character of the persons with whom it was dealing ; that there has been a plain violation, through the instrumentality of the trustees, and by their misconduct or the misconduct of some of them, of the rights of the beneficiaries under these contracts, and that plaintiff is entitled to the relief sought.

The practice does not permit a defendant, even though he has concealed in his answer a counter-claim, to stand by and permit the plaintiff to proceed as though no counter-claim were pleaded, and thus attempt to take advantage of the omission to file a reply by moving to dismiss the plaintiff's complaint.

*Special Term, December,* 1883.

*James Armstrong,* for plaintiff.

*Alexander & Green,* for defendant the American Rapid Telegraph Company.

*William A. Boyd* and *Ewing & Southard,* for defendant Horatio G. Angle.

*Thomas Thacher,* for defendants Craig and Wallace.

*Erastus New* and *William A. Beach,* for defendants Church and Rice.

MACOMBER, *J.*— This action is brought by the plaintiff as one of the *cestui que trusts,* in behalf of himself and his co-beneficiaries, against the trustees and the party to whom the trustees have disposed of the trust property.

At the trial and after the close of the plaintiff's case, counsel for the defendant company and for the defendants Craig and Wallace, moved for a dismissal of the complaint on various grounds.

The motion was formally denied, and thereupon they declined giving any evidence in the case, and resting upon what they deemed to be omissions and deficiencies in the plaintiff's case, submitted their rights as the case then stood.

I refer to my findings for the facts in detail. For the pur-

pose of considering the argument of the defendants' counsel and the elaborate briefs submitted on all sides in the case, the following summarized statement of the facts is perhaps sufficient:

On the 11th day of December, 1878, the defendants Craig Foot and Randall were the owners of certain discoveries and inventions in the art or science of conveying intelligence by electricity. The plaintiff Bear also had obtained a patent of an invention known as an improvement in the Terraqueous telegraph, and had on file in the proper office at Washington, a caveat for another invention known as the Telegraphone. On that day, namely, the 11th day of December, 1878, these parties entered into what is known as a syndicate agreement, which is set forth in the case. Angle and Craig entered upon the discharge of their obligations, in pursuance of such agreement, and on the 23d day of December, 1878, they issued to the plaintiff a certificate for twenty shares of the syndicate stock. On the 9th day of January, 1879, the plaintiff and Randall and Foote executed a paper or letter addressed to Horatio G. Angle and Daniel H. Craig, describing them as trustees under the contract of December 11, 1878, and authorizing and requesting them to purchase and consolidate into the American syndicate of telegraph patents, created by the contract of December 11, 1878, the American compound telegraph wire for the uses of said syndicate, and authorizing them for that purpose to take into their number another trustee to aid in the management of the matter, to wit, either Chester Snow or Thomas Wallace.

The defendant company was organized as a corporation under the laws of the state of New York on the 24th day of February, 1879, for the purpose of purchasing or acquiring control of the rights, interests, privileges and property in the trust, and of building and operating telegraph lines therefor. Its capital stock upon its organization was divided into 30,000 shares of the par value of $100 each, and was distributed among James M. Brown, Edwin Read and Thomas Wallace,

its incorporators, in lots of 10,000 shares each. Thomas Wallace above mentioned was a director of the company. In pursuance of the letter the defendants Craig and Angle purchased for the benefit of the trust the said wire interest, and did associate with themselves the said Thomas Wallace, who accepted the appointment under the terms set forth in the agreement of March 14, 1879, between the Telegraph Construction Company and Angle, Craig and Wallace. The instrument, by which the inventions and patents held by Angle and Wallace, as trustees, were transferred to Read, Brown and Wallace, bears date March 28, 1879.

On the same day Read, Brown and Wallace transferred the same inventions and patents to the defendant the American Rapid Telegraph Company. The telegraph company afterwards made a contract with said Craig to build its line from New York to Boston. The capital stock of the company was increased to $4,000,000 on March 25, 1880, and $10,000,000 on March 9, 1881.

It is apparent that the two contracts, both bearing date March 28, 1875, are parts of the same transaction by which the American Rapid Telegraph Company purchased the entire trust property and became indebted therefor to the defendants, Angle, Craig and Wallace, as trustees. The corporation was chargeable not only by the connection of Wallace with its organization, but by the fair inference to be drawn by the course of dealing with the several parties, with knowledge of the representative character of the persons with whom it was dealing. It is claimed by the learned counsel for the defendants that the company was in no way bound to regard the rights of the syndicate trustees.

In this I cannot agree with them, nor in their position, that all the company need do was to see that the number of shares contracted for were in form transferred to the trustees. It does, indeed, appear that Angle, Craig and Wallace received these shares of stock, if the mere recital in the receipt is sufficient to show such fact to exist. But it is quite apparent

from the proof and admission in the pleadings, that the stock, nearly all of it, went back simultaneously into the hands of the company. By the answer itself of the defendant corporation the 30,000 shares were issued for the use of the trustees, upon the understanding and agreement that 9,970 shares should be forthwith returned to the treasury for working capital, and 20,000 shares should be retained by it, to be held to await the result of the examination as to value and title, and to be thereafter distributed. Without going into the details of the case further upon this branch of it, it is apparent, in the absence of proof explaining the conduct of the company and extenuating the acts of the trustees, that there has been a plain violation, through the instrumentality of the trustees, and by their misconduct or the misconduct of some of them, of the rights of the beneficiaries under these contracts.

As the case stands, therefore, I do not see that the court has any discretion to withhold from the plaintiff the relief sought, which is placed upon the ground of the misconduct of the trustees through the connivance of the corporation, which had full knowledge of the duties and obligations of the trustees to their *cestui que trust*.

It does not appear that the defendant Angle, who has died since the action was begun, has been guilty of any active violation of his duty. But it does appear that he had refused to become a party plaintiff to the action, and he was properly therefore made a party defendant.

The other questions in the case are not of difficult disposition. It is contended that the defendant company is entitled to an affirmative judgment against the plaintiff upon the inspection of its answer, which contains, as is alleged, a counter-claim. It is true that the matter pleaded is stated to be for answer and by way of counter-claim. There is no separation of the counter-claim by separate numbering from the defenses and denials, and no special affirmative relief is asked for in the prayer.

I do not understand that the practice permits a defendant,

even though he has concealed in his answer a counter-claim, to stand by and permit the plaintiff to proceed as though no counter-claim were pleaded, and so attempt to take advantage of the omission to file a reply at the close of the plaintiff's case, and upon an application to dismiss the complaint. If it were necessary, I should deem it the duty of the court, in the exercise of its discretion, to permit a reply, which, in this case, would be the sheerest formality, to be filed *nunc pro tunc*.

Furthermore, I do not think the agreement contained in what is known as the arbitration clause, can stand in the way of the relief here sought by the plaintiff. That agreement was to the effect that the product of the trust property was to be apportioned among the different patents and inventions, and to be divided among the beneficiaries by their trustees. There is not a defect of parties. It appears that Mr. Angle declined to be a party plaintiff, and for that reason was properly made a party defendant. Mary E. Foote was not a party to the syndicate agreement of December 14, 1878. Edwin Reade was made a party by the service on him of an order. The affidavits and the order by which he was brought into the case show that Foote and Randell are no longer interested parties, and Reade himself has made default.

In the absence of any plan of a defect of parties, I do not think that the court has any reason to bring in other persons than those already before it for a full and complete judgment.

I should have preferred that the defendants had produced their proofs before me, rather than to be obliged to pass upon a case of this magnitude upon a partial presentation of the facts thereof. Nevertheless, I do not see that I have any discretionary power to withhold from the plaintiff the judgment which these facts show he is entitled to.